UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUDAH M., and TERRY M., Individually and as Parent and Next Friend of JUDAH M., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 10 C 3788<br>)<br>) Judge Ruben Castillo |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, DISTRICT 299, | )<br>)<br>) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

Judah M. and his mother, Terry M. (collectively, "Plaintiffs"), bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, for attorney's fees and costs against the Board of Education of the City of Chicago, District 299 (the "District"). (R. 1, Compl.) Presently before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (R. 11, District's Mot.; R. 14, Pls.' Mot.) For the reasons stated below, both motions are granted in part and denied in part.

## RELEVANT FACTS[1]

In September and October of 2009, Plaintiffs participated in a due process hearing held pursuant to the IDEA regarding Judah's special education services. (R. 17, District's Rule 56.1

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 13, District's Local Rule 56.1(a) Statement of Material Facts ("District's Facts"); R. 16, Pls.' Local Rule 56.1(a) Statement of Material Facts ("Pls.' Facts"); R. 17, District's Local Rule 56.1(b) Response to Pls.' Local Rule 56.1 Statement of Material Facts ("District's Rule 56.1 Resp."); R. 20, Pls.' Local Rule 56.1(b) Response to District's Local Rule 56.1 Statement of Material Facts ("Pls.' Rule 56.1 Resp."); R. 21, Pls.' Local Rule 56.1(b)(3)(C) Statement of Additional Facts ("Pls.' Add'l Facts").)

Resp. ¶ 21.) At this time, Judah was a ten-year-old fifth-grader at the Williams Multiplex Elementary School, and his resident school district was Chicago Public School ("CPS") District No. 299. (R. 20, Pls.' Rule 56.1 Resp. ¶ 1.) Plaintiffs presented nine issues to the impartial hearing officer at the due process hearing:

1. The District's failure to adhere to child-find obligations under the IDEA;

2. The District's failure to provide the parent a copy of her rights under the IDEA when referring Judah to an Intervention Assistance Team rather than an evaluation under the IDEA;

3. The District's failure to provide an appropriate and individualized evaluation in a timely manner in order to adequately identify the nature and extent of Judah's disabilities from February 2, 2007 through the present;

4. The District's failure to send a conference notice within ten days to convene an Individualized Education Programs ("IEP") meeting after the parent submitted Independent Educational Evaluations ("IEEs") and requested an IEP meeting;

5. The District's failure to complete a CPS speech language and occupational therapy ("OT") evaluations before the start of the 2008-2009 school year and convene an IEP meeting to consider the evaluations and develop an IEP per the Illinois School Code;

6. The District's failure to provide an appropriate educational program/placement based on scientific, researched-based evidence, including a certified special education teacher, and related service with sufficient intensity to meet Judah's educational needs from February 2, 2007 to the present;

7. The District's failure to identify in a timely manner and then provide appropriate assistive technology in the classroom setting and for all school work including training for staff, student, and parent from February 2, 2007 to the present;

8. The District's failure to develop individualized goals/objectives based on accurate present levels of performance in all of Judah's IEPs; and

9. The District's failure to accurately and objectively report to the parent the lack of Judah's progress in the CPS offered services and programs.

(R. 17, District's Rule 56.1 Resp. ¶ 22.)

At the hearing, Plaintiffs sought nine forms of relief. Specifically, Plaintiffs requested that the hearing officer:

1. Find that the District failed to appropriately and timely identify Judah in all areas of suspected educational need;

2. Find that the District violated the IDEA procedures for conference notification of meeting to review IEEs;

3. Order full funding for IEEs either through payment directly to the Parent or the IEE providers;

4. Order the District to provide a private learning disabilities school program including safe and reliable transportation, or other appropriate program that provides a free appropriate public education ("FAPE") to Judah;

5. Order the District to implement all of the outside evaluators' recommendations;

6. Order the District to convene an IEP meeting to develop an appropriate IEP for Judah to implement the recommendations of the Order IEEs;

7. Find that Judah was denied FAPE and is awarded compensatory services for the failure of the District to provide appropriate evaluations and IEPs including appropriate placement in a timely manner;

8. Order compensatory services which may include, depending on the recommendations of IEE providers, tutoring services beyond the regular school day by a certified special education teacher, speech language services, OT services, and compensatory services in the form of placement at a private learning disabilities school and safe/reliable transportation, in addition to additional assistive technology, and lastly all other relief as appropriate based on IEE findings and recommendations;

9. Order all other relief as deemed necessary to provide FAPE.

(*Id.* ¶ 23.)

After the four-day hearing, the hearing officer issued a decision denying in part and granting in part Plaintiffs' requests for relief. Specifically, the hearing officer denied Plaintiffs' request that the hearing officer: (1) find that the District failed to appropriately and timely

identify Judah in all areas of suspected disability, except with respect to the District's failure to identify Judah's occupational therapy needs, (*id.* ¶ 25(1)); (2) find that the District violated IDEA procedures for conference notification of a meeting to review the IEEs, (*id.* ¶ 25(2)); (3) order full funding for the IEEs,[2] (*id.* ¶ 25(3)); (4) order the District to pay for Judah to attend a private learning disabilities school, (*id.* ¶ 25(4)); and (5) order the District to implement all of the outside evaluators' recommendations, (*id.* ¶ 25(5)).

The hearing officer granted several of Plaintiffs' requests. Specifically, the hearing officer: (1) ordered the District to convene an IEP meeting to develop an appropriate IEP for Judah, (*id.* ¶ 26(1)); (2) found that the District denied Judah FAPE by failing to conduct a timely occupational therapy evaluation and provide him with occupational therapy services, and by failing to provide him with goals and benchmarks that provided direct instruction in reading decoding, (*id.* ¶ 26(2)); (3) ordered compensatory services, (*id.* ¶¶ 26(3)-(5)); and (4) ordered the District to provide proof of compliance by December 4, 2009, (*id.* ¶ 26(6)).

## PROCEDURAL HISTORY

On June 6, 2010, Plaintiffs filed suit seeking attorney's fees and costs incurred as a result of the due process hearing held pursuant to the IDEA, 20 U.S.C. § 1415(i)(3). (R. 1, Compl.) Plaintiffs claim that they were the prevailing party and are entitled to $58,935.40 for fees and costs incurred in the administrative proceeding; additional fees in connection with monitoring, enforcement, and implementation actions directly related to the hearing officer order; prejudgment interest from June 2, 2010; and reasonable attorney's fees for the present suit. (*Id.*)

---

[2] The hearing officer did order the District to reimburse the costs for the occupational therapist's evaluation of Judah and for her time spent testifying at trial. (*Id.*)

The parties agreed that this dispute could be resolved through cross-motions for summary judgment, (R. 9, Status Report), and each party has accordingly moved for summary judgment. (R. 11, District's Mot. for Summ. J.; R. 14, Pls.' Mot. for Summ. J.) In its memorandum in support of its motion for summary judgment, the District requests that Plaintiffs' fee award be reduced to $11,043.90.[3] (R. 12, District's Mem. at 6-7.) The District contends that this reduction is proper because Plaintiffs' billing is unreasonable and Plaintiffs achieved less than all of the relief sought. (*Id.* at 3-4.) Plaintiffs, on the other hand, maintain that they are presently entitled to $60,976.60 for fees and costs incurred in the representation in the administrative hearing and for additional legal work through September 20, 2010. (R. 15, Pls.' Mem. at 9, 15.) In support, Plaintiffs argue that they are prevailing parties and their attorney's fees are reasonable. (*Id.* at 12-14.)

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In resolving a motion for summary judgment, the Court draws all reasonable inferences and resolves all factual disputes in the non-moving party's favor. *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009). On cross-motions for summary judgment, the same standard

---

[3] As discussed below, the District's fee award proposal has changed numerous times over the course of the briefing of these motions. This number reflects their initial request.

5

of review in Federal Rule of Civil Procedure 56 applies to each movant. *Continental Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for [it]." *Wheeler*, 539 F.3d at 634.

## ANALYSIS

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(A). Parents who disagree with a local educational agency's "identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child," may request an impartial due process hearing conducted by the appropriate state educational agency. *Id.* §§ 1415(b)(6)(A), (f)(1)(A). The IDEA, like many federal statutes, further provides that in any action or proceeding brought pursuant to the IDEA, a court, in its discretion, may award "reasonable attorney's fees" as part of the costs to a "prevailing party" who is a parent of a child with a disability. *Id.* § 1415(i)(3)(B). In general, courts apply the same principles applicable to attorney's fees awards for civil rights cases under 42 U.S.C. § 1988 to cases brought under the IDEA. *See Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997).

6

The Court's analysis of an appropriate fee award begins with determining whether a plaintiff is entitled to "prevailing party" status. *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709 (7th Cir. 2005). Next, if the plaintiff crosses this "statutory threshold," the Court must determine whether the claimed fees are "reasonable" under the circumstances. *Id.* The "starting point" of this inquiry is the lodestar figure—"the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citation omitted). Once this figure is determined, the Court considers the factors set out in *Hensley v. Echkerhart*, 461 U.S. 424 (1983), and adjusts the fee award accordingly. *Id.*

Here, the parties agree that Plaintiffs are entitled to "prevailing party" status and thus the main dispute is whether Plaintiffs' requested fees are "reasonable." (R. 18, District's Resp. at 3.) While Plaintiffs maintain that they are entitled to all of the requested attorney's fees, the District argues that the fees should be reduced for two reasons. First, the District argues that the hours spent by Plaintiffs' attorneys on research, drafting of documents, and correspondence were unnecessary, excessive, and duplicative. (R. 12, District's Mem. at 3.) Second, the District maintains that because Plaintiffs achieved less than all of the relief sought, the fees should be denied or significantly reduced. (*Id.* at 4.) The Court will address these issues in its discussion of the Lodestar amount and the *Hensley* factors, to which the Court now turns.

I. **Lodestar amount**

As the party seeking the award of attorney's fees, Plaintiffs bear the burden of establishing the reasonableness of the time expended and hourly rates charged by their attorney used to determine the Lodestar amount. *Hensley*, 461 U.S. at 437; *Spellan v. Bd. of Ed. for Dist.*

*111*, 59 F.3d 642, 646 (7th Cir. 1995). Plaintiffs have submitted fee petitions which detail the activities and time allocated in the representation, as well as the hourly rates charged by attorney Sara Mauk and legal assistant P.J. Godina. (R. 1, Compl., Ex. C.) There is no dispute about the hourly rates charged by Mauk and Godina, and the District does not contend that those rates are unreasonable. (R. 18, District's Resp. at 2.) Accordingly, the Court finds that the rates charged—$240/hour for Mauk and $110/hour for Godina—are reasonable.

The District makes several objections regarding the second figure in the Lodestar calculation—the hours in Plaintiffs' fee petition.[4] (*Id.* at 3.) The Supreme Court has directed that "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 444. Accordingly, if the prevailing party fails to exercise the proper billing judgment, as the District contends Plaintiffs failed to do here, a court should exclude from the fee calculation "hours that were not 'reasonably expended.'" *Id.* (citation omitted).

Regarding the time expended by Plaintiffs' attorney, Plaintiffs' fee petition states that Mauk expended 240.99 hours on the hearing and compliance and 8.4 hours in supplemental legal work to date. (R. 1, Compl, Ex. C-48; R. 16, Pls.' Facts, Ex. E.) Additionally, Plaintiffs claim 1.5 hours of work by Godina, and $958 in total costs. (*Id.*) After reviewing the District's objections to their fee petition, Plaintiffs agreed that eight items were duplicates entered

---

[4] One of the District's main objections is to the fees related to the claims on which Plaintiffs did not succeed. The District contends that 78.22 hours were spent on items related to claims for which Plaintiffs were not prevailing parties. (R. 12, District's Mem. at 2.) The Court finds, however, that this argument is more properly viewed as one to reduce the lodestar and is therefore addressed in the next section.

erroneously, and reduced Mauk's time by 11 hours. (R. 21, Pls.' Add'l Facts ¶12.) Accordingly, Plaintiffs propose a lodestar amount of $57,378.60, and a total award of $58,336. (R. 19, Pls.' Resp. at 11.) Their calculation is as follows:

**Hearing/Compliance Fees**
| | | |
|---|---|---|
| P.J. Godina | 1.5 hrs. at $110/hr. | 165.00 |
| S. Mauk | 229.99 hrs. at $240/hr. | <u>55,197.60</u> |
| | Attorney's Fees | 55,362.60 |
| | Costs. | <u>932.80</u> |
| | Initial Total | 56,295.40 |

**Supplemental Fees**
| | | |
|---|---|---|
| S. Mauk | 8.4 hrs. at $240/hr. | <u>2,016.00</u> |
| | Attorney's Fees | 2,016.00 |
| | Costs. | <u>25.20</u> |
| | Supplemental Total | 2,041.20 |
| | | |
| | Total Attorney's Fees | 57,378.60 |
| | Total Costs | <u>958.00</u> |
| | **TOTAL** | **$58,336.60** |

The District disagrees that the hours claimed by Plaintiffs' attorney were "reasonably expended" and suggests a different Lodestar amount. Before addressing the District's objections, however, the Court notes that the District's briefs and Rule 56.1 statement of facts are inconsistent and unclear regarding the amount the District believes is owed to Plaintiffs and how the District arrived at those calculations.[5] The District's most recent filing suggests a base

---

[5] For example, the District's memorandum in support of its motion for summary judgment and its Rule 56.1 statement of facts, which were filed the same day, provide two different numbers for the District's total potential liability based on the inclusion of some post-hearing hours in one and not the other. (R. 12 at 6; R. 13, Ex. B at 76.) The District's reply also contends that the total maximum liability is $15,808.70, (R. 22 at 4), while the exhibit attached in support states that the total maximum liability is $14,100.14, (*id.*, Ex. E at 77.).

9

loadstar amount of $29,910, and a total award of $30,340.51.[6] (R. 22, District's Reply, Ex. E at 77.) This number results from the following calculation:

| P.J. Godina | 1.5 hrs. at $110/hr. | 165.00 |
| S. Mauk | 69.02 hrs. (uncontested) at $240/hr. | 16,564.80 |
| S. Mauk | 54.92 hrs. (contested) at $240/hr. | 13,180.80 |
| | Total Attorney's Fees | 29,910.60 |
| | Costs | 429.91 |
| | **TOTAL** | **$30,340.51** |

The District also withdrew some of its objections to Plaintiffs' post-hearing fees, and concedes that $4,084.80 of fees may be due for compliance issues. (*Id.* at 4.) Additionally, the District contends that $680 is a reasonable amount for Plaintiffs' supplemental fees. (*Id.* at 1.) Although the District clearly states the final amount it believes is owed to Plaintiffs, the Court has been unable to discern how the District reached the reduced number of hours used in the calculating this proposed figure. As such, the Court will use Plaintiffs' proposed hour amount of 238.39 hours and will reduce that base amount in accordance with any valid objections raised by the District.

The District first objects to 18 hours Plaintiffs' attorney spent conducting legal research and drafting pleadings in this case. (*Id.* at 3-4.) The District contends that the legal research was unnecessary and not compensable because Plaintiffs' attorney has extensive experience in this area, and Plaintiffs did not advance any unique theory of law. (*Id.*) Further, because Mauk specializes in this area of the law, the District argues, many of the items she billed should have taken substantially less time. (R. 22, District's Reply at 3.) After reviewing the pleadings and the areas of research conducted by Mauk, the Court declines to reduce the time Mauk billed

---

[6] The District actually states that the base amount is $29,919.60, but this is due to a calculation error.

drafting the complaint. While there is inevitably overlap among due process hearing complaints and the pertinent legal issues, Plaintiffs' complaint involved factual allegations specific to their lawsuit.

Regarding the time spent conducting legal research, however, the Court finds Plaintiffs have failed to justify the five hours of legal research conducted by Mauk. Mauk's hourly rate of $240 reflects the fact that she has been licensed to practice law since 2005 and has "extensive experience litigating special education cases." (R. 16, Pls.' Facts ¶ 33.) Given Mauk's experience in this area and Plaintiffs' failure to highlight any issues specific to this case requiring additional legal research, the Court finds that Plaintiffs have failed to meet their burden of establishing the reasonableness of the five hours spent on legal research. At the same time, however, the Court recognizes that even the most experienced attorneys must remain abreast of new developments in the law, and that a minimal amount of time spent on legal research for that purpose is reasonable. Accordingly, the Court reduces the fee award by three hours, or $720.

Next, the District argues that Plaintiffs spent an inordinate amount of time on the correspondence in this case due to excessive, duplicative, and unnecessary emails, and requests that the Court deduct 29.48 hours from the fee petition. (R. 12, District's Mem. at 4.) As mentioned above, Plaintiffs conceded that 11 hours billed were duplicative entries and reduced the number of hours on the fee petition accordingly. Plaintiffs have directed the Court to many of the emails related to the remaining hours, and after reviewing them, the Court does conclude that the 18.48 hours of time billed for correspondence objected to by the District are reasonable.

In reaching the conclusion that the hours requested by Plaintiffs are for the most part reasonable, the Court notes that most of the over 200 objections made by the District to entries

on Plaintiffs' fee petition were conclusory and speculative. This is especially true in light of the fact that the District did not submit its own time sheets to provide a comparison for the Court to determine whether the hours expended by Plaintiffs' attorney were reasonable. *See Ryan M. v. Bd. of Educ. of the City of Chi.*, 731 F. Supp. 2d 776, 790 (N.D. Ill. 2010) ("[T]he party opposing the fee must make some showing as to why the time billed should be reduced by a certain amount."); *M. v. Bd. of Educ. of City of Chi.*, No. 10 C 2110, 2010 WL 2698285, at *5 (N.D. Ill. July 7, 2010) (reducing plaintiff's fee award by five hours when the defendant board submitted information from the Illinois Administrative Code outlining the requirements for a due process complaint and providing evidence of the average time spent drafting similar complaints); *Brogato v. Proviso Twp. Mental Health Comm'n*, No. 04 C 7493, 2008 WL 904776, at *4 (N.D. Ill. Mar. 31, 2008) (reducing plaintiff's attorney's fee award where the plaintiff "out bill[ed]" the defendant substantially). Absent specific and supported objections by the District, the Court will not "eyeball the fee request and cut it down by an arbitrary percentage because it seemed excessive[.]" *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) (internal quotation marks and citations omitted).

In sum, given Plaintiffs' detailed explanations and the District's conclusory assertions, the Court accepts Plaintiffs' proposed hourly rates and number of hours expended on the due process hearing and follow-up compliance, with the exception of the three hour deduction for excessive time spent on legal research. Accordingly, the total award for attorney's fees and costs stands at $57,616.60 ($56,658.60 in attorney's fees and $958 in costs).

## II. Fee reduction based on Plaintiffs' incomplete success

Having calculated the lodestar, the Court now turns to the *Hensley* factors. As the Supreme Court explained in *Hensley*:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief.

461 U.S. at 434 (internal citation omitted). *Hensley* instructs that where a plaintiff prevails on only some of her interrelated claims, as is the case here, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37. This inquiry proceeds in two steps. First, the Court must decide whether a downward adjustment of Plaintiffs' lodestar recovery is proper under the circumstances. *Sottoria v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010). Second, if a reduction in fees is appropriate, the Court must determine the reasonable amount to reduce the fees given the results actually obtained by Plaintiffs. *Id.* The District argues that Plaintiffs' award should be reduced by 66%, (R. 12, District's Mem. at 6), while Plaintiffs contend that because they achieved substantial relief, the award should not be reduced at all, or at most by 15%. (R. 19, Pls.' Resp. at 2.)

The Court agrees with the District that a reduction is appropriate in this case because the hearing officer denied significant elements of Plaintiffs' requested relief. As discussed above, Plaintiffs pursued eight main requests for relief at the hearing, five of which were largely denied. (R. 17, District's Rule 56.1 Resp. ¶¶ 23-26.) Additionally, the relief denied to Plaintiffs—including private school placement and full funding for IEEs—was substantial in the context of Plaintiffs' requests. While a plaintiff "need not prevail on every claim or legal theory

13

to receive fully compensatory attorney's fees," *Sottoria*, 617 F.3d at 976 (citing *Hensley*, 461 U.S. at 435), the hearing officer's explicit denial of several of Plaintiff's related, but discrete, requests for significant relief leads the Court to conclude that Plaintiffs achieved only "partial success" and the award should be adjusted accordingly.

The question remains as to the appropriate reduction given the results obtained by Plaintiffs. Plaintiffs contend that they obtained substantial relief, and therefore that no reduction is appropriate. (R. 15, Pls.' Mem. at 9.) Alternatively, they urge the Court for a reduction no greater than 15% of the total award. (R. 19, Pls.' Resp. at 10.) Defendants, on the other hand, request that the award be reduced by 66% given Plaintiffs' success on only three claims. (R. 12, District's Mem. at 6.) This proposed reduction resembles the "claim counting" specifically rejected in *Hensley*, in which the Supreme Court counseled against "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." 461 U.S. at 435 n.11. Nevertheless, the Court concludes that the degree of success obtained by Plaintiffs supports a reduction of 40% to the Plaintiffs' fee award.

The hearing officer's conclusions of law support the Court's determination that the lodestar should be substantially reduced to reflect the limited degree of success achieved by Plaintiffs. The hearing officer concluded "that on the whole, the District has provided [Judah] with FAPE." (R. 16, Pls.' Facts, Ex. A at 20.) The officer noted that "the evidence demonstrated that CPS staff conscientiously attempted to identify [Judah's] educational needs by promptly and thoroughly responding to the Parent's request for school-based problem solving." (*Id.*) The evidence also showed that the District provided Judah with an IEP that addressed Judah's deficits in reading comprehension, math, social emotional skills, and speech and language, and that

Judah made adequate progress on the IEP goals. (*Id.*) Importantly, the hearing officer also found that a private school program was not necessary because "[b]y providing modifications and accommodations to be employed in the regular classroom, the [District] ensured that [Judah] was educated in the least restrictive environment with his peers, and was exposed to the same curriculum to the extent possible." (*Id.*) In terms of Plaintiffs' successful requests, the hearing officer found that "[w]hile CPS has largely succeeded in providing [Judah] with FAPE," the District denied Judah FAPE through its failure to address Judah's decoding deficits as well as it failure to timely evaluate Judah's occupational therapy needs and provide him with occupational therapy. (*Id.*)

Regarding Plaintiffs' assertion that the District denied Judah FAPE by failing to adhere to its child-find obligation, the hearing officer concluded that the "District satisfied its child-find obligation in a timely way." (*Id.* at 21.) Plaintiffs' next claim, that the District failed to timely and adequately assess Judah in all areas of suspected disability, was similarly unsuccessful. The hearing officer concluded that the evidence showed that the District satisfied the IDEA requirements to ensure that Judah was assessed in all areas of suspected disability, except for in the area of occupational therapy. (*Id.* at 21-23.) The hearing officer found that the evidence did not support Plaintiffs' assertion that the District erred when it failed to assess Judah's speech and language skills as part of its initial full individual evaluation or that the evaluation was inadequate when it occurred. (*Id.* at 23.) The hearing officer also concluded that the District acted appropriately with respect to an assistive technology evaluation. (*Id.* at 24.) Plaintiffs also failed on their claim that the District committed procedural violations that resulted in a denial of FAPE. (*Id.*) Although Plaintiffs did not allege any substantive violations of FAPE, the hearing

15

officer did find that Judah's IEP failed to provide him with any goals that directly addressed his decoding deficits. (*Id.* at 25.)

Given these findings, the hearing officer granted Plaintiffs limited relief. Notably, the hearing officer denied placement in a private learning disabilities school because the school Judah was attending—with the modifications and accommodations put in place by the District—was the least restrictive environment for Judah. (*Id.* at 26.) The hearing officer also denied Plaintiffs' request for an order of full funding for Plaintiffs' IEEs as well as Plaintiffs' request to implement all of the outside evaluators' recommendations. (*Id.*)

In terms of the relief granted, as discussed above, the hearing officer ordered the District to convene an IEP meeting to develop an IEP for Judah to address the hearing officer's decision. (*Id.*) The order also required compensatory services in the form of occupational therapy, consultative services, assistive technology services, and reading instruction. (*Id.* at 26-27.) While the hearing officer denied Plaintiffs' request to implement all of the outside evaluators' recommendations, the hearing officer relied upon many of Plaintiffs' outside evaluators' assessments in her order. (*See id.* at 18, 20, 26.) Finally, the hearing officer ordered the District to provide proof of compliance with the order by December 4, 2009. (*Id.* at 27.)

Given these limited results obtained by Plaintiffs, as well as the District's request for a 66% reduction and Plaintiffs' request for a 15% reduction, the Court concludes that Plaintiffs' award should be reduced by 40%. The award of 60% of the amount sought by Plaintiffs will yield a reasonable attorney's fee award under the circumstances presented by this case.

### III. Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on the Court's award of attorney's fees. The granting of prejudgment interest is left to the sound discretion of the district court. *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993). In cases of violations of federal law, prejudgment interest "should be *presumptively available*" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *Id.* (quoting *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). Based on this presumption, courts may award prejudgment interest in cases for attorney's fees under the IDEA. *See Christopher C. v. Bd. of Educ. City of Chi.*, No. 10 C 821, 2010 WL 3420266, at *4 (N.D. Ill. Aug. 26, 2010) (listing cases). If awarded, prejudgment interest is calculated using the prime rate for the appropriate period. *See First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999).

"[P]rejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately." *Am. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted). District courts interpreting this language in the context of attorney's fee awards under the IDEA have generally resolved the accrual issue two ways. First, some courts have used the date the hearing officer issued the pertinent order or decision as the accrual date for the purposes of prejudgment interest. *See T.P. ex rel. Kimbrely R. v. City of Chi. Pub. Sch. Dist. 299*, No. 10 C 2604, 2011 WL 1197353, at *12 (N.D. Ill. Mar. 29, 2011); *Ryan M.*, 731 F. Supp. 2d at 796. Alternatively, other courts have used the date the plaintiffs submitted their fee petition to the defendant school board. *See Christopher C.*, 2010 WL 3420266, at *4-5; *Stephanie J. v. Bd. of Educ. of City of Chi., Dist. 299*, No. 10 C 1359, 2010 WL 3070461, at *5

(N.D. Ill. July 30, 2010). This discrepancy can be explained by the discretionary nature of prejudgment interest awards; the chosen dates reflect the specific facts and circumstances of each case.

Here, the District contends that the Court should use the date Plaintiffs filed their complaint, June 17, 2010, as the accrual date. (R. 18, District's Resp. at 4.) Plaintiffs, on the other hand, argue that October 20, 2009, the date the hearing officer issued a clarification and the hearing order became final, is the proper date. (R. 15, Pls.' Mem. at 15.) Neither contention is persuasive. Instead, the Court concludes that the appropriate accrual date in this case is thirty days after Plaintiffs' submission of fee petitions to the District on June 2, 2010 for the interim fee petition, and September 20, 2010 for the supplemental petition. (R. 17, District's Rule 56.1 Resp. ¶¶ 28-29.)

The Court reaches this conclusion for three reasons. First, as previously mentioned, the possibility of an award of prejudgment interest removes the incentive for a defendant to delay in payment. Here, however, while Plaintiffs correctly argue that they technically become entitled to reasonable attorney's fees as prevailing parties when the hearing officer's order became final, the initial delay in payment resulted not from the District's refusal to pay, but rather Plaintiffs' delay in submitting their fee petition to the District for over seven months after the order was final. *See Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 746 (7th Cir. 2003) ("[I]t would have been inappropriate to provide the plaintiff with an enhancement for delay when the plaintiff caused the delay."). Second, the Court will not award prejudgment interest starting on the date the hearing order became final for attorney's fees sought in the supplemental fee petition, which were incurred by Plaintiffs several months later. Finally, the Seventh Circuit has emphasized that

because "the purpose of a fee award is to reimburse the plaintiff for the cost he would reasonably incur if he purchased legal assistance in the market . . . the proper approach to the calculation of interest requires consideration of prevailing practices in the legal-services market." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 272 F.3d 936, 938 (7th Cir. 2001) (citations omitted). While the parties have submitted no affidavits or evidence regarding the prevailing practices in this area of the legal-services market, the Court believes it is reasonable for the District to have a period of time to review Plaintiffs' fee petitions, like a client would have, without being charged interest. Accordingly, Plaintiffs are entitled to prejudgment interest on the reduced amount of their fees beginning thirty days after the submission of their fee petitions to the District.[7]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the District's motion for summary judgment (R. 11). The Court also grants in part and denies in part Plaintiffs' motion for summary judgment. (R. 14.) The Clerk of the Court is directed to enter judgment in favor of Plaintiffs and against the District. Plaintiffs are entitled to recover a total of $34,569.96, plus prejudgment interest as set forth above.

Entered: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated:** July 18, 2011

---

[7] In their memorandum, Plaintiffs also request that the Court award attorney's fees for the present suit. This request, however, will only be considered upon the filing of a separate motion.